IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AOAO MAALAEA YACHT MARINA,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF PLANNING FOR THE COUNTY OF MAUI,<br><br>Defendant. | CIVIL NO. 22-000162 JAO-RT<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, ABSTAINING UNDER THE *PULLMAN* DOCTRINE, AND STAYING PROCEEDINGS** |

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, ABSTAINING UNDER THE *PULLMAN* DOCTRINE, AND STAYING PROCEEDINGS**

Plaintiff AOAO Maalaea Yacht Marina, a nonprofit corporation with the purpose of managing and maintaining the Maalaea Yacht Marina Condominium ("the Condo" or "MYM"), sued the Maui County Department of Planning ("the County") on behalf its unit owners ("Owners"). Plaintiff challenges the 2020 amendment to Maui County Code ("MCC") section 19.24.020 ("the Amendment"), which excludes short-term rental homes and transient vacation rentals ("TVRs") within Maui County's M-1 light industrial district ("M-1 light district"). The Condo is located in the M-1 light district. Plaintiff alleges that the County's enforcement of the Amendment as to the Condo violates both Hawai'i state and federal laws because the Owners' use of the Condo as TVRs constitutes a

non-conforming use and the Owners have a vested right in continuing to operate their units as TVRs.  Plaintiff later filed a motion for preliminary injunction ("PI Motion"), asking the Court to enjoin the County's attempt to prohibit TVR use at the Condo to maintain the status quo until a decision on the merits.  The County filed a motion for judgment on the pleadings ("the Motion") and also opposes Plaintiff's PI Motion.

For the reasons discussed in this Order, the Court GRANTS the County's Motion, ABSTAINS from exercising jurisdiction over the federal claim, DISMISSES the remaining state claims and STAYS the case, including the resolution of the PI Motion, until a state court renders a decision on the state claims.

## I.       BACKGROUND

### A.    The Alleged Facts

The Condo was built in 1979, is located in the M-1 light district of Wailuku, Hawaiʻi, and sits oceanfront on Maalaea Bay.  ECF No. 1 at 4 ¶ 9.  The Condo owners have continuously operated its units as TVRs since the Condo's construction.  *Id*. at 6 ¶ 19.  In 1989, the Maui County Council ("the Council") passed Ordinance No. 1979 ("O1979") to restrict TVRs as a permitted use in the apartment district.  *Id*. at 7 ¶ 25.  To clarify O1979, then-Deputy Corporation Counsel Richard Minatoya issued a legal opinion ("Minatoya Opinion") aiming to

elucidate certain exceptions that allowed for continued TVR use in the apartment district. *Id*. at 7 ¶ 26.[1]  The Minatoya Opinion addressed only exemptions from O1979 in the apartment district. *See* ECF No. 32-21 ("This is in response to your request dated July 27, 2001 for a legal opinion on which apartment units are excluded from the prohibition on [TVRs] *in the Apartment District.*") (emphasis added)).

The County subsequently assembled the "Minatoya List," specifying each property that was effectively "grandfathered" into legal TVR use in the apartment district ("the List").  ECF No. 1 at 8 ¶ 28.  The List included properties outside the apartment district, like MYM, and was made publicly available on the County's main website. *Id*. at 8 ¶¶ 28–30.  Although disputed, Plaintiff alleges that the List has included the Condo since 2001.  Compare *id*. at 8 ¶ 30 *with* ECF No. 39 at 9 *and* ECF No. 39-9 at 2.  But the parties agree that sometime in 2019, the Condo was removed from the List. *Id*. at 9 ¶ 33; ECF No. 39-1 at 3.

---

[1]  Plaintiff cites Ordinance No. 1989 in its Complaint as the ordinance that restricted TVR use in the apartment district, but O1979, which was passed in 1989, restricted TVR use in the apartment district.  The Minatoya Opinion states that the subject of the opinion is the "Lawful Application of [O1979] (1989)."  O1979 (1989) did not apply to "building permits, special management area use permits, or planned development approval which were lawfully issued and valid on" April 20, 1989.  Subsequently, Ordinance No. 1989 (1991) was passed, which pertained to "Time Sharing Plans," *see* ECF No. 32-15, and prohibited time share units, time share plans, and TVRs except as provided in the ordinance.  According to the Minatoya Opinion, Ordinance No. 1989 (1991) "completed the task of deleting [TVRs] as permitted uses" in the apartment district."

Prior to 2020, MCC section 19.24.020 ("the Pre-Amendment Statute") provided that all permitted uses in business districts B-1 to B-3 were allowed within M-1 zoned properties, except for hotels and motels.  ECF No. 1 at 4–5 ¶ 12.  B-1 properties were permitted to operate "short-term rental homes" and B-3 properties were permitted to operate TVRs.  *Id*. at 5 ¶¶ 13–14.  As such, Plaintiff alleges there was no express prohibition against operating short-term rental homes or TVRs in the M-1 light district under the Pre-Amendment Statute.  *Id*.

But in 2020, the Council passed the Amendment, which expressly excluded the use of short-term rentals homes and TVRs within the M-1 light district.  *Id*. at 5–6 ¶ 16; *see* MCC § 19.24.020 (2020).  Plaintiff allege that the Pre-Amendment Statute had not expressly prohibited TVR use in the M-1 district and that the List had also expressly included the Condo as a property allowed to be used for TVRs since 2001.  ECF No. 1 at 8 ¶ 30.  So, Condo owners have purchased and sold their units in reliance on the List.  Id. at 8 ¶ 31.  The Owners also pay higher property taxes, General Excise Tax, and Transient Accommodation Tax based on the TVR use.  *Id*. at 8 ¶ 32.

 Since October 18, 2021, the County has sent several notices of warnings to numerous Owners demanding that all short-term rental operations cease by February 1, 2022.  *Id*. at 9 ¶ 35.  The warning notices threaten severe civil fines against owners who fail to comply with the deadline.  *Id*. at 9 ¶ 36.  More than half

of the Owners use their apartments as TVRs with rental reservations already booked well into 2022.  *Id*. at 10 ¶ 37.

## B.    Procedural History

Plaintiff filed its Complaint on April 11, 2022, alleging four counts:  (1) Count I-Nonconforming Use ("NCU Claim"); (2) Count II-Vested Rights ("VR Claim"); (3) Count III-Just Compensation Under the Fifth Amendment of the Federal and State of Hawai'i Constitutions ("Takings Claim"); and (4) Count IV-Denial of Due Process Under the Federal and State of Hawai'i Constitutions ("Due Process Claim").  *See* ECF No. 1.  Plaintiff asks the Court to assert supplemental jurisdiction over its state claims—its NCU Claim and VR Claim.

The County filed its Motion on February 29, 2023.  ECF No. 29.  Plaintiff opposed the Motion on March 17, 2023, ECF No. 37, and Defendant replied on March 21, 2023, ECF No. 38.

Plaintiff filed its PI Motion on March 8, 2023, ECF No. 32, and Defendant opposed the motion on April 24, 2023, ECF No. 39.  Defendant replied on May 1, 2023.  ECF No. 40.

The Court held a hearing on the Motion and PI Motion on May 19, 2023. ECF No. 41.  After the hearing, the Court directed the parties to review its decision in *Tran v. Department of Planning for County of Maui*, 2020 WL 3146584 (D. Haw. June 12, 2020) and to file supplemental briefing on whether the Pullman

abstention doctrine applied in this case.  ECF No. 42.  The parties timely filed their briefs on May 26, 2023.  *See* ECF Nos. 43–44.

## II.   STANDARD OF REVIEW

A party may move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (footnote omitted) (citation omitted).  "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted).  A district court may not go "beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Id.* (citing Fed. R. Civ. P. 12(c) (other citations omitted)).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* (citation omitted).

## III.   DISCUSSION

The County asserts that the Court lacks subject matter jurisdiction over Plaintiff's claims as presently pled.  ECF No. 29-1 at 1.  In particular, the County

argues that Plaintiff lacks standing to raise a claim for damages on behalf of its members.  *See id*. at 3–8.  The County contends that Plaintiff's Takings Claim must therefore be dismissed with prejudice because it cannot be cured by amendment and that its NCU Claim, VR Claim, and Due Process Claim must be limited to declaratory or injunctive relief.  The Court agrees.

Additionally, the Court, after reviewing the parties' supplemental briefs, exercises its discretion under the *Pullman* abstention doctrine and stays the remainder of this case pending the outcome of future state court proceedings.  As further explained in section C below, the central issues in this case easily fall within the ambit of questions that should be decided by state, not federal courts, and the federal claims here rely on the answers to those questions.

## A.    Standing in Federal Court

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994).  The Constitution "endows the federal courts with 'the judicial Power of the United States,' Art. III, § 1," which "extends only to 'Cases' and 'Controversies,' Art. III, § 2."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016) (internal brackets omitted).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy,"

and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* at 338.

"Hawai'i state courts, on the other hand, are not subject to a 'case or controversy' jurisdictional limitation. Rather, pursuant to Article VI, Section 1 of the Constitution of the State of Hawai'i, '[t]he several courts . . . have original and appellate jurisdiction as provided by law.'" *Tax Found. of Hawai'i v. State*, 144 Hawai'i, 175, 190, 439 P.3d 127, 142 (2019) (quoting Haw. Const. art. VI, § 1). So, "[i]n Hawai'i courts, standing is solely an issue of justiciability, arising out of prudential concerns of judicial self-governance." *Id.* (citation omitted).

Plaintiff contends it has standing to sue under Hawai'i Revised Statute ("HRS") § 514B-104(a)(4), which permits condominium associations to "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." *See* ECF No. 37 at 10. But Plaintiff misunderstands what is required for standing in *federal* court.

In federal courts, standing implicates subject matter jurisdiction because of the "cases and controversies" limitation in the Constitution. The United States Supreme Court has always "insist[ed] on strict compliance with this jurisdictional standing requirement." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (citation omitted); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In

8

no event . . . may Congress abrogate the Art. III minima:  A plaintiff must always have suffered 'a distinct and palpable injury to himself,' [*Warth v. Seldin*, 422 U.S. 490, 501 (1975)], that is likely to be redressed if the requested relief is granted." (citation omitted)).  "So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court," if the plaintiff is unable to establish Article III standing. *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001).

Because the Court's jurisdiction to hear claims is limited by Article III of the Constitution, neither HRS § 514B-104(a)(4) nor any state law can provide a basis for Plaintiff to bypass the requirement of Article III standing.  Plaintiff must therefore establish Article III standing for a federal court to exercise jurisdiction over its claims.  *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

"Three elements form the irreducible constitutional minimum of standing to file suit in federal court."  *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) (citation and internal quotation marks omitted).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). "The injury in fact

must constitute 'an invasion of a legally protected interest which is (a) concrete

and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"

*Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560 (1992)). And because Plaintiff brings its claims on

behalf of its members, Plaintiff is also required to meet further requirements to

bring suit in federal court.

Federal law recognizes an association's standing to bring suit on behalf of its

members when: "(a) its members would otherwise have standing to sue in their

own right; (b) the interests it seeks to protect are germane to the organization's

purpose; and (c) neither the claim asserted nor the relief requested requires the

participation of individual members in the lawsuit [(the "*Hunt* test")]." *Hunt v.*

*Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The first two

requirements of the *Hunt* test are constitutionally mandated under the case and

controversy requirement of Article III, while the third requirement is prudential,

"best seen as focusing on . . . matters of administrative convenience and efficiency,

not on elements of a case or controversy within the meaning of the Constitution."

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc*., 517 U.S. 544,

555–557 (1996). "To see *Hunt*'s third prong as resting on less than constitutional

10

necessity is not, of course, to rob it of its value." *Id*. at 556. "[P]rudential standing . . . embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1044 (9th Cir. 2008) (alterations in original) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). The prudential character of this requirement simply recognizes that this requirement is "malleable by Congress."[2]  *United Food*, 517 U.S. at 551.

Ultimately, then, not only must Plaintiff allege Article III standing—that each of its members suffered an injury in fact that is (1) fairly traceable to the challenged conduct Defendant, and (2) likely to be redressed by a favorable judicial decision—Plaintiff must also allege sufficient facts on its ability to meet the *Hunt* test. Only then may this Court properly exercise subject matter jurisdiction over its claims.

## B.   Damages Under the *Hunt* Test

The main issue in dispute regarding standing here concerns the third requirement of the *Hunt* test—whether the claims asserted require the participation

---

[2]  The Supreme Court has concluded that although Congress may not confer Article III standing on an association, because the last requirement of the *Hunt* test is prudential rather than constitutional, Congress may abrogate the third requirement of the *Hunt* test by permitting an association to sue for money damages. *See United Food*, 517 U.S. at 558 ("Because Congress authorized the union to sue for its members' damages, and because the only impediment to that suit is a general limitation, judicially fashioned and prudentially imposed, there is no question that Congress may abrogate the impediment."). But, monetary damages under a Congressional act is not before the Court in this case.

of individual members in the lawsuit.  The County contends that any claim for monetary damages would mandate the participation of its individual members, so Plaintiff does not have standing to seek monetary damages on behalf of its members and may only bring claims for injunctive or declaratory relief.  ECF No. 29-1 at 6–8.  The County thus maintains that the Court must "dismiss any claim that . . . depends upon an award [of] damages[.]"  *Id.* at 8.  The Court agrees.

The Supreme Court has opined "that 'individual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members," but that its earlier decision in *Hunt* suggested "that an association's action for damages running solely to its members would be barred for want of the association's standing to sue" because "[individual] participation would be required in an action for damages to an association's members[.]"  *United Food*, 517 U.S. at 546 (citing *Hunt*, 432 U.S. at 343).  The Supreme Court declined, however, to squarely address the question of whether, absent congressional abrogation, the third requirement of the *Hunt* test would bar a simplified claim for damages.  *See id.* at 554 n.5 ("In light of our conclusion that in the WARN Act Congress has abrogated the third prong of the associational standing test, we need not decide here whether, absent congressional action, the third prong would bar a 'simplified' claim for damages.").

The Ninth Circuit has pointed out however that "no federal court has allowed an association standing to seek monetary relief on behalf of its members." *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990) (citing *Telecomm. Rsch. & Action Ctr. v. Allnet Commc'n Servs., Inc.*, 806 F.2d 1093, 1095 (D.C. Cir. 1986)).  The court opined that "[t]he courts that have addressed this issue have consistently held that claims for monetary relief necessarily involve individualized proof and thus the individual participation of association members, thereby running afoul of the third prong of the *Hunt* test." *Id.*  Therefore, it is not necessarily a per se rule that an association may not seek monetary relief on behalf of its members.  It's just never been done before.

Nonetheless, for the reasons discussed further in this Order, the Court concludes that Plaintiff's claims for damages run afoul of the third prong of the *Hunt* test.  The Court addresses each claim for damages beginning with the federal claims.

### 1.    The Federal Takings Claim

Plaintiff alleges that many of the Owners purchased their units "for use as a [TVR], a lawful nonconforming use with significant value."  ECF No. 1 at 13 ¶ 56.  Plaintiff contends that it "has a reasonable, investment-backed expectation that such use would continue."  *Id.*  Plaintiff avers that since the issuance of the

warnings, the County has "interfered with, damaged, and taken Plaintiff's property interests and vested rights in the Property," for which the United States and Hawai'i Constitutions require the payment of just compensation. *Id*. at 13 ¶ 57. Plaintiff thus contends it is "entitled to compensation for the taking of their property interests in an amount to be proven at trial." *Id*.

The Complaint does not allege sufficient facts for the Court to find that the Takings Claim would not require the individual participation of its members.  It is possible that the "damages claims are not common to the entire membership, nor shared by all in equal degree," in which case, "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515–16. Also, regulatory takings claims require an "ad hoc" factual inquiry, "considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)).  Although the Court can conceive of a situation in which individual participation would not be required, it is more likely that some individual participation will be necessary to determine any damages in this case.  Indeed, there has been no suggestion that all the Owners charge the same rates to rent their TVRs, and Plaintiff concedes that not all the

Owners rent out their units.  *See* ECF No. 1 at 10 ¶ 37 ("More than half of MYM owners use their apartments as [TVRs].").

Plaintiff argues that it meets the third requirement of the *Hunt* test because each and every unit owner has been uniformly deprived of the same property right and any individual owner's participation to establish damages is only marginal. ECF No. 37 at 19.  This may be true, but the Court is unable to discern what this "marginal" participation looks like or how Plaintiff proposes to calculate damages that will not require participation from the individual owners under the *Hunt* test.

And even if Plaintiff were able to allege facts on how damages in this case could be calculated without individual participation, the Court declines to be the first to deviate from the general practice of disallowing associations from seeking money damages on behalf of its members.  *Cf. Telecomm. Rsch. & Action Ctr.*, 806 F.2d at 1095 ("[Plaintiff] invites us to select this case to set the precedent not yet made because the alleged injury . . . would not require individualized proof. . . . We think we are not at liberty to break new ground in this case . . . .  A court, in matters such as this, writes for a genre of cases, not for one day and case alone."). Under the current state of associational standing jurisprudence, a plaintiff may not bring a claim for money damages without running afoul of the third prong of the *Hunt* test.

Plaintiff's only recourse would thus be to seek declaratory and injunctive relief on its Takings Claim.  The Supreme Court decision in *Knick v. Township of Scott, Pennsylvania.*, 139 S. Ct. 2162 (2019), forecloses such relief.  The premise of a takings claim "is that the property owner has already suffered a violation of the Fifth Amendment that may be remedied by money damages."  *Knick*, 139 S. Ct. at 2177.  "Today, because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable."  *Id.* at 2176.

And granting declaratory relief would be inappropriate because it would be tantamount to barring Defendant from enforcing the zoning regulation against the Owners.  *See id*. at 2177 ("Given the availability of post-taking compensation, barring the government from acting will ordinarily not be appropriate."); *see also Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1103 (E.D. Wash. 2021) ("As other federal district courts have found, [seeking declaratory] relief [for a taking] is inappropriate because it would be the functional equivalent of an injunction against enforcement of the [law at issue]."  (citing *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 391 (D. Mass. 2020); *Cty. of Butler v. Wolf*, 2020 WL 2769105, *4 (W.D. Pa. May 28, 2020); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 358 n.112 (E.D. Pa. 2020)).  "As long as an adequate provision for obtaining just

compensation exists, there is no basis to enjoin the government's action effecting a taking." *Knick,* 139 S. Ct. at 2176.

Based on the foregoing, the Court GRANTS the County's Motion as to Plaintiff's Federal Takings Claim and DISMISSES Plaintiff's Federal Takings Claim WITH PREJUDICE.

### 2.    Plaintiff's Remaining Claims

In addition to a declaration, Plaintiff seeks "compensation" in its Due Process Claim and "damages" in its state claims—the NCU and VR Claims.  ECF No. 1 at 12 ¶¶ 49, 53, 65.  The Court lacks subject matter jurisdiction over these monetary requests for relief in Plaintiff's remaining claims for the same reason it lacks jurisdiction over Plaintiff's Takings Claim.  Plaintiff may not bring a claim for damages on behalf of its members without running afoul of the third requirement of the *Hunt* test.

The Court also notes that, in any case, Hawaiʻi state law does not permit an award of money damages under the theory of vested rights or estoppel.  *See Bridge Aina Leʻa, LLC v. State of Hawaii Land Use Comm'n*, 125 F. Supp. 3d 1051, 1080 (D. Haw. 2015), *aff'd sub nom. by* 950 F.3d 610 (9th Cir. 2020) ("The *Allen* court went on to find that damages were unavailable under both theories.") (citing *Allen v. City & Cnty. of Honolulu*, 58 Haw. 432, 438, 571 P.2d 328, 331 (1977)).

Therefore, the Court LIMITS the relief available on the other claims to declaratory or injunctive relief insofar as Plaintiff seeks the relief on behalf of the Owners, and to the extent the claims are not dismissed as described below.

## C.    The Motion for Preliminary Injunction

The Court must evaluate the remaining claims and requested relief in considering the PI Motion.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (requiring a motion for injunctive relief to have a sufficient relationship or nexus to the underlying complaint).

The remaining requests for relief in Plaintiff's Complaint are as follows:

1.  Due Process Claim:  "Plaintiff is . . . entitled to a judicial declaration that the County has interfered with their procedural and substantive due process rights," *id*. at 15 ¶ 66;

2.  NCU Claim:  "Plaintiff is entitled to a declaration that Plaintiff's [TVR] operations at the [Condo] constitute a nonconforming use and that the County is thereby estopped from enforcing zoning provisions that seek to restrict such use," *id*. at 12 ¶ 48; and

3.  VR Claim:  "Plaintiff is entitled to a declaration . . . that the County has interfered with their vested rights in the [Condo] and/or the County is estopped from interfering with their use of the [Condo] as a [TVR]," *id*. at 12 ¶ 53.

Plaintiff also requests the following in its "Prayer for Relief:"

A. That a declaratory judgment be entered finding and ordering that Plaintiff's use of the [Condo] as a [TVR] is a lawful nonconforming use.

B. That a declaratory judgment be entered finding and ordering that Plaintiff's use of the [Condo] as a [TVR] is a vested right due to Plaintiff's reliance on the County's representations.

C. For preliminary and permanent injunctive relief in favor of MYM and against the County, restoring and protecting MYM unit owners' right to conduct [TVRs] in MYM units.

ECF No. 1 at 15.  So, the only remaining federal claim is a constitutional claim, which relies on the state claims, *see* ECF No. 1 at 14 ¶ 60 (alleging that Plaintiff's transient vacation rental use of the Condo is "a valuable constitutional protected property interest as a vested right"), thus raising the question of whether the Court should apply the *Pullman* doctrine and abstain from entertaining the Due Process Claim or the PI Motion until a Hawai'i court has decided the NCU and VR Claims.

Plaintiff points to a recent United States Supreme Court opinion that reasoned that state law is one important source to define property rights, but that state law cannot be the only source.  ECF No. 44 at 11 (citing *Tyler v. Hennepin Cnty., Minnesota*, 143 S. Ct. 1369, 1375 (2023)).  Plaintiff thus argues that "examination of Plaintiff's property interest may be necessary for purposes of its takings and due process claims regardless of its vested rights under state law." ECF No. 44 at 5.  The Court disagrees.

19

For due process claims, "[k]ey to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022). Plaintiff only alleges an entitlement pursuant to its vested rights under state law; it fails to cite to an independent federal authority for its Due Process Claim. In fact, Plaintiff cites only to Hawaiʻi Supreme Court opinions in support of its Due Process Claim. So there is no basis in Plaintiff's Complaint for this Court to examine Plaintiff's Due Process Claim aside from through the lens of its state-based claims.

For this reason, the Court concludes that "principles of comity and federalism justify postponing the exercise of jurisdiction" under the *Pullman* doctrine. *See Pearl Inv. Co. v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1462 (9th Cir. 1985) ("[A]bstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." (quoting *Harman v. Forssenius*, 380 U.S. 528, 534 (1965)).

### 1. Pullman Doctrine

Plaintiff seeks a preliminary injunction that enjoins the County from prohibiting TVR use at MYM "because the unit owners at MYM have the vested right to operate TVRs and have relied on official assurances from the County of

20

Maui that TVR use is permitted." ECF No. 32 at 2. Plaintiff hangs its hat on a critical proposition—Plaintiff argues that the use of the Condo as vacation rentals was lawful before the Pre-Amendment Statute and that this was confirmed by the Condo's inclusion on the List, which the Planning Director confirmed that the public could rely on at the time it was issued. ECF No. 32-1 at 20–21. Plaintiff thus contends that it has a vested right under Hawaiʻi law to use its units as vacation rentals and the deprivation of that right violates due process. *Id.*

The crux of the County's Opposition to the PI Motion is that short-term rentals were never lawful in M-1 light districts, ECF No. 39 at 9, and that Plaintiff could not have relied on the List until it was published in June 2018, and then MYM was removed from the List on November 9, 2019, *id.* at 23; ECF No. 39-1 at 3 ¶ 9. The County further asserts that only two units were purchased within that timeframe so Plaintiff cannot rely on the List for its claims because it does not apply to all its members, thus raising federal standing issues. ECF No. 39 at 23 (citing ECF No. 39-18).

Plaintiff's Due Process Claim thus depends on whether it was *ever* legal for the Condo to be utilized as a TVR under Hawaiʻi law. As explained further in this Order, there can be no due process violation if Plaintiff was never permitted to use the Condo for TVR purposes.

Although neither party moved for abstention, federal courts may raise the

*Pullman* doctrine sua sponte.  *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976).

And while the Court raised the issue sua sponte, ECF No. 42, the Court permitted

the parties to brief the Court on their positions on the doctrine.  *See* ECF Nos. 43–

44.

"The abstention doctrine based on *Railroad Commission v. Pullman Co*.,

312 U.S. 496 (1941) is a narrow exception to the district court's duty to decide

cases properly before it."  *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th

Cir. 1984).  The *Pullman* doctrine "allows postponement of the exercise of federal

jurisdiction when 'a federal constitutional issue . . . might be mooted or presented

in a different posture by a state court determination of pertinent state law.'"  *Id*.

(quoting *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983)).

*Pullman* abstention also applies "whether or not a state proceeding is pending[.]"

*Gilbertson v. Albright*, 381 F.3d 965, 970 n.6 (9th Cir. 2004).

Because the Court dismisses Plaintiff's Takings Claim with prejudice, the

only remaining federal claim is Plaintiff's federal constitutional Due Process

Claim, which relies on Plaintiff's state claims.  So the Court finds it necessary to

consider whether it should exercise its discretion and abstain from considering this

federal claim until the Hawaiʻi courts have made a determination on the NCU and

VR Claims.

*Pullman* abstention is appropriate where:

(1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain.

*Courthouse News Serv. v. Planet*, 750 F.3d 776, 783–84 (9th Cir. 2014) (citation omitted).  The Court finds that the foregoing requirements are satisfied here.

    a.  Sensitive Area of Social Policy

The Ninth Circuit has long "held that land-use planning questions 'touch a sensitive area of social policy' into which the federal courts should not lightly intrude." *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001) (quoting *Pearl Inv. Co. v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985)); *see also Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1094 (9th Cir. 1976) (holding land use planning is "a sensitive area of social policy").  And as the Court recognized in *Tran*, "the short-term rental issue has been and continues to be a hot-button topic and a sensitive issue of social policy throughout the State." *Tran v. Dep't of Plan. for Cnty. of Maui*, 2020 WL 3146584, at *9 (D. Haw. June 12, 2020) (citing *Kendrick v. Planning Dep't*, 2020 WL 736245, at *7 (D. Haw. Feb. 13, 2020) (invoking *Burford* abstention and finding that "[p]olicies governing residential vacation

rentals are subject of significant local interest and important public policy")).  This alone is sufficient to conclude the first factor has been met.

Plaintiff urges the Court not to abstain under *Pullman*, arguing that the policy sensitivities tied to land use planning are not dispositive.  ECF No. 44 at 3.  Plaintiff contends that this district court often declines to abstain on local land use cases.  *Id*. at 4 (citing cases in footnote 3).  Plaintiff lists a number of cases in support of this contention, but a review of those cases demonstrates that they are distinguishable from the instant case.

For example, in *Hawaiʻi Legal Short-Term Rental Alliance v. City & County of Honolulu*, Judge Watson granted a preliminary injunction to enjoin a Honolulu ordinance.  Unlike this case where the parties hotly dispute whether it was ever legal for the Condo to be utilized as TVRs, it was *undisputed* in that case that residential property owners on Oʻahu had previously been able to lawfully rent their properties to tenants for a minimum of 30 days.  *Haw. Legal Short-Term Rental All. v. City & Cnty. of Honolulu*, 2022 WL 7471692, at *1 (D. Haw. Oct. 13, 2022) ("Residential property owners on Oʻahu have long been able to lawfully rent their properties to tenants for a minimum of 30 days. That much is undisputed."); *see also DW Aina Leʻa Dev., LLC v. Hawaii*, 2022 WL 1665311, at *6 (D. Haw. May 25, 2022) (deciding case on standing grounds, not on Hawaii's land use laws); *Flint v. Cnty. of Kauai*, 521 F. Supp. 3d 978, 988 (D. Haw. 2021)

24

(opining that whether nonconforming TVR use constitutes a property right appears to be an unsettled area of state law, then citing district court cases that declined to rule on this sensitive question under *Pullman*, but addressing the takings claim because it failed on separate grounds); *Burmeister v. Cnty. of Kauai*, 2018 WL 2050131, at *1 (D. Haw. May 2, 2018) (deciding summary judgment motions on several contract, trespass, and tort claims, but no claims requiring a decision on any land use law or ordinance); *Kauai Beach Villas-Phase II, LLC v. Cnty. of Kauai*, 955 F. Supp. 2d 1156, 1172 (D. Haw. 2013) (adjudicating whether a section in the County of Kauaʻi Charter and a 2011 Kauaʻi ordinance were unconstitutional and also whether these provisions violated HRS § 46-4, and declining to apply *Pullman* because the applicable state law in the action was clear); *Hale O Kaula Church v. Maui Planning Comm'n*, No. 01-00615 SPK/KSC, 2003 U.S. Dist. LEXIS 24510, at *16-17 (D. Haw. July 18, 2003) (declining to apply *Pullman* because the case centered around First Amendment claims and "it is rarely appropriate for a federal court to abstain under [*Pullman*] in a First Amendment case" (quoting *Porter v. Jones*, 319 F.3d 483, 486–87 (9th Cir. 2003)).

The instant case involves a challenge to the County's limit on the use of MYM as a TVR.  The Court concludes that this particular land-use planning question is a sensitive area of social policy.  *Maui Vacation Rental Ass'n, Inc.* v.

*Maui Cnty. Plan. Dep't*, 501 F. Supp. 3d 948, 955 (D. Haw. 2020) ("Because 'the short-term rental issue has been and continues to be a hot-button topic and a sensitive issue of social policy throughout the State,' the first factor is met." (quoting *Tran*, 2020 WL 3146584 at *9 (citation omitted)).

> b.   Avoidance of Federal Constitutional Adjudication

Plaintiff confirmed at the hearing that it alleges both substantive and procedural due process violations in the Complaint.  Plaintiff alleges that the right to use one's property as a TVR is a "valuable and constitutionally protected interest as a vested right that is protected under the United States Constitution, Hawaii Constitution, State law, and County ordinance."  ECF No. 1 at 14 ¶ 60. Plaintiff further alleges that its owners "have been afforded neither notice nor an opportunity to be heard at a meaningful time and in a meaningful manner before being deprived by the County of their significant property interests."  *Id*. at 14 ¶ 62.

"A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."  *Armstrong*, 22 F.4th at 1066 (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) (ellipsis in original)).  "When protected interests are implicated, the right to some kind of prior hearing is paramount," but "the range of interests

protected by procedural due process is not infinite." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972) (footnote omitted).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Roth*, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). But property interests, "are not created by the Constitution." *Roth*, 408 U.S. at 577. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

Plaintiff's Due Process Claim relies on its position that the Owners have a "valuable and constitutionally protected interest as a vested right" to use their condos as TVRs and the County deprived the Owners of this constitutional right without due process. ECF No. 1 at 14 ¶ 60. A state court's determination of whether Hawai'i state law creates a property interest will surely reduce the contours of litigating the federal due process claims. *See Smelt v. County of Orange*, 447 F.3d 673, 679 (9th Cir. 2006) ("And it is not even necessary that the

state adjudication 'obviate the need to decide all the federal constitutional questions' as long as it will 'reduce the contours' of the litigation." (quoting *C-Y Dev. Co.*, 703 F.2d at 380)).

The Court concludes constitutional adjudication plainly can be avoided or narrowed by a definite ruling on the state claims.

### c.    Uncertainty of Determinative State Law Issues

"Because of the localized and complex nature of land-use regulations, [the Ninth Circuit] generally require[s] only a minimal showing of uncertainty in land-use cases." *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1151 (9th Cir. 2022) (citations omitted).  Plaintiff's state law claims require the Court to analyze whether TVRs were ever lawful in M-1 light districts, thus conferring on Plaintiff a vested right to continue operating its units as TVRs.

Plaintiff argues that "the applicable Hawaii law, such as HRS § 46-4 and vested rights/zoning estoppel, have been developed extensively by Hawaii's appellate courts.  Thus, when state law principles are straightforward and can be applied to different sets of facts, *Pullman* abstention is unwarranted."  ECF No. 44 at 5 (citing *Kauai Beach Villas-Phase II, LLC v. Cnty. of Kauai*, 955 F. Supp. 2d 1156, 1172 (D. Haw. 2013).  But Plaintiff misses the point of the third factor of the *Pullman* doctrine.

28

The third factor of the *Pullman* doctrine examines whether the *determinative* issues of state law are uncertain.  *Sinclair Oil Corp. v. Cnty. of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996).  Here, the determinative issue of state law is not what constitutes a vested right or when zoning estoppel may be applied—the Court agrees that those matters are generally well-covered in caselaw.  Instead, the determinative issue is whether Plaintiff had a preexisting lawful right to use its property as a TVR pursuant to previous versions of the relevant ordinance.  This issue is absolutely an uncertain area of Hawaiʻi state law, particularly in this case where there have been a myriad of changes to the relevant ordinances in Maui's Comprehensive Zoning Ordinances ("CZO"), not to mention the existence of the Minatoya Opinion and the List.

Hawaiʻi courts have never interpreted any version of MCC § 19.24.020 nor can the Court find any cases even superficially discussing Maui's M-1 light district.  Yet, this case requires the Court to determine what is/was permitted in Maui's M-1 light district for a span of over three decades without any definitive guidance from Hawaii's courts.

To the extent Plaintiff relies on the Hawaiʻi Intermediate Court of Appeals' ("ICA") decision in *County of Maui v. Puamana Management Corporation*, 2 Haw. App. 352, 631 P.2d 1215 (App. 1981) for any definitive ruling as to its

29

vested rights to use the Condo as TVRs from 1979–1981, the Court does not find *Puamana* applicable in this case.

Contrary to what Plaintiff asserts, the ICA did not hold in *Puamana* that the "County's CZO did not prohibit the renting of a dwelling unit for periods of seven (7) days at a time to transient occupants." *See* ECF No. 32-1 at 14.  Rather, *Puamana* simply held that the condo in that case, a residentially zoned planned unit development that did not consist of a building, could not be characterized as a hotel because, regardless of how the owners were using their units, the development as a whole was not structurally a "hotel" within the meaning of the ordinance.  *Puamana*, 2 Haw. App. at 356, 631 P.2d at 1218–19 ("Clearly, the units in question do not fall within the definition of hotel in the ordinance because it is obvious from the pleadings that Puamana does not consist of a single building.").

MYM is not in a residential district and the ordinance the ICA was interpreting applied to residential districts.  Even the Hawai'i Supreme Court has rejected the applicability of the definition of "hotel" in *Puamana* where the "Maui zoning code, as interpreted by the [ICA] in *Puamana*, [was] different from the one applicable" in their case.  *Stallard v. Consol. Maui, Inc.*, 103 Hawai'i 468, 83 P.3d 731 (2004).  So it is doubtful that the ICA's holding in *Puamana* has any import in

this case or that it can be used to support Plaintiff's contention that state law is clear on what usage was permitted in the M-1 light district from 1979–1981.

Plaintiff also maintains that, despite any shifting zoning laws, the List confirms the legality of MYM's usage of its rentals as TVRs and that MYM has been included on the List since at least 2010.  ECF No. 32-1 at 12.  But Plaintiff relies on a document dated May 27, 2010, which was produced in discovery by counsel for the County, not the *actual* List.  *See* ECF No. 32-1 at 12 n.3; ECF No. 32-12.

Although the point at which Plaintiff was permitted to operate TVRs is a moving target in Plaintiff's filings, there is ample evidence in the parties' filings to indicate that the List was not available to the public until 2018.  Plaintiff also states as much in its Opposition to the County's Motion.  *See* ECF No. 37 at 7 ("In 2018, the County officially endorsed and published the Minatoya List and assured unit owners that they could operate TVRs without a permit if their condominium was on the Minatoya List."); *see also* ECF No. 39-9 at 2 (April 2018 letter to the County from the Director of Government Affairs of the Realtors Association of Maui, Inc. stating, "still to this day the public has never been given the list of properties" permitted to operate TVRs and "[p]roperty owners have nowhere to validate this property right").  It is therefore unclear what impact the List has in this case, other than possibly raising federal standing issues for Plaintiff since only

owners that have purchased their units after the List was published have standing to rely on the List.

In any case, the Ninth Circuit requires only a minimum showing of uncertainty in land-use cases for the third *Pullman* requirement "because of the localized and complex nature of land-use regulations." *Gearing*, 54 F.4th at 1151; *see also id*. (citing *Sederquist v. City of Tiburon*, 590 F.2d 278, 282 (9th Cir. 1978) (explaining the third factor was met in a case challenging local permitting regulations because "of the many local and state-wide land use laws and regulations applicable to the area in question")).  Whether MYM's use of its units as TVRs constitutes a non-conforming use or whether the Owners have a vested right to use their units as TVRs turns on the peculiar facts and interpretation of Maui's comprehensive land use scheme as there are a number of local land use laws and regulations, past and present, that are applicable to the resolution of Plaintiff's state claims.

Without any Hawai'i state court decisions interpreting land use ordinances applicable to the M-1 light district, the Court cannot predict how the Hawai'i Supreme Court would decide the issues of state law in this case.  *See Pearl Inv. Co. v. City & Cnty. of San Francisco,* 774 F.2d 1460, 1465 (9th Cir. 1985) ("Uncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of

state law.").  Hawaiʻi state courts, not the federal court, should be the first to weigh in on the state land use issues presented in this case.

2. Abstain and Stay

When a district court abstains under *Pullman*, it "must dismiss the state law claim and stay its proceedings on the constitutional question until a state court has resolved the state issue." *Cedar Shake & Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622 (9th Cir. 1993).  The Court thus DISMISSES the NCU and Vested Rights Claims and (1) STAYS proceedings on Plaintiff's Due Process Claim, and (2) STAYS a decision on the PI Motion until a state court has resolved the NCU and Vested Rights Claims.  Plaintiff must refile the state law claims in Hawaii's circuit court and seek a definitive ruling on the state law questions before returning to federal court. *San Remo Hotel v. City & Cnty. of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Judgment on the Pleadings and DISMISSES Plaintiff's Takings Claim WITH PREJUDICE.  The Court also ABSTAINS under the *Pullman* doctrine and thus, DISMISSES Plaintiff's NCU and Vested Rights Claim and STAYS proceedings on the Due Process Claim and the Motion for Preliminary Injunction until a state court has resolved the NCU and Vested Rights Claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, June 30, 2023.



Jill A. Otake
United States District Judge


CIVIL NO. 22-000162 JAO-RT; *AOAO Maalaea Yacht Marina v. Maui County Planning Department*; ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, ABSTAINING UNDER THE *PULLMAN* DOCTRINE, AND STAYING PROCEEDINGS